IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

NO. 23-13913
Criminal File No.: 1:21-cr-00375-MLB-JEM-3

_____


UNITED STATES OF AMERICA

Plaintiff-Appellee

versus

ARTURS SPILA

Defendant-Appellant


_____


A DIRECT APPEAL OF A CRIMINAL CASE FROM THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
_____

MICHAEL H. SAUL
Attorney for Appellant Spila
Georgia Bar Number 627025
P.O. Box 4504
301 Washington Ave.
Marietta, Georgia, 30061
770-429-8787
saulattorney@gmail.com

JOSEPH H. SAUL
Attorney for Appellant Spila
Georgia Bar Number 432592
301 Washington Ave.
Marietta, GA 30060
770-499-7000
jsaul@saulfirm.com

1

United States v. Arturs Spila, Appeal Docket Number 23-13913

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____
NO. 23-13913
Criminal File No.: 1:21-cr-00375-MLB-JEM-3

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee

versus

ARTURS SPILA

Defendant-Appellant

_____

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 11th Circuit Rules I hereby certify that those listed below are interested in the outcome of this case:

Bai, Enze, Witness/Victim

Baskakov, Grigorii, Defendant in a related case

Brown, Michael, United States District Court Judge

Buchanan, Ryan, United States Attorney

Campion, Kelly, Witness

Cassady, Francis, Witness/Victim

Chaiken, Tal, Assistant U.S. Attorney

United States v. Arturs Spila, Appeal Docket Number 23-13913

Chaverri, Krystal, Witness

Christian, Ryan, Assistant U.S. Attorney

Erskine, Kurt, Former United States Attorney

Gannon, Kasia, Witness

Heller, Jaime, Witness

Kanunnikov, Ivan, Co-Defendant

Kaushal, Samir, Assistant U.S. Attorney

Kledzik, Andrew, Witness/Victim

Marquess, Kristin, Witness

Martinez, Reina, Witness

McBath, J. Elizabeth, United States Magistrate Judge

O'Connor, Daniel, Witness/Victim

Pennington, Jacqueline, Witness/Victim

Saint-Cyr, Danie, Witness/FBI Agent

Saul, Joseph, Defendant's trial and appellate counsel

Saul, Michael, Defendant's trial and appellate counsel

Schilk, John, Witness

Spila, Arturs, Defendant-Appellant

Spitsyn, Aleksandr, Defendant in a related case

United States of America, Appellee

United States v. Arturs Spila, Appeal Docket Number 23-13913

Ware, William, Witness/FBI Agent

Zherebiatev, Dmitrii, Co-Defendant

Zhirnov, Igor, Defendant in a related case

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Respectfully submitted,

*/s/ Joseph H. Saul*
Joseph H. Saul
Attorney for Appellant Spila
Georgia Bar No. 432592
301 Washington Ave
Marietta, Georgia, 30060
770-499-7000
Jsaul@saulfirm.com

United States v. Arturs Spila, Appeal Docket Number 23-13913

## <u>CERTIFICATE OF COMPLIANCE AND SERVICE</u>

This Certificate complies with the typeface requirements of Fed. R. App.P.32(a)(5) and the type-style requirements of Fed. R. App.P.32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 word processing software in 14-point Times New Roman.

This document complies with the type-volume limit because excluding the parts of the document exempted by Fed. R. App. P. 32(f) and (g), this document contains 8,198 words.

The Appellant served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

April 4, 2024

Respectfully submitted,

*/s/Joseph H. Saul*
Joseph H. Saul
Attorney for Appellant Spila
Georgia Bar No. 432592

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant Arturs Spila ("Spila") requests oral argument.

This case presents a question of first impression for the United States Court of Appeals for the Eleventh Circuit.  Specifically, whether the Money Laundering Conspiracy statute (18 U.S.C. § 1956(h)) requires the defendant and/or his co-conspirators have knowledge that the underlying proceeds being laundered came from an activity that is a felony.  Or if the requirement is a lower threshold – that the defendant and/or his co-conspirators only needed to have knowledge that the proceeds being laundered came from any illegal activity (misdemeanor or felony).  Spila's reading of 18 U.S.C. § 1956 and the jury instructions given by the District Court require actual knowledge by a defendant and/or his co-conspirators of felony activity, while the Government contends only knowledge of any type of illegal activity is required.

Additionally, this Court should have oral argument related to an evidentiary issue that came up at the trial.  The Court admitted emails allegedly between co-conspirators and also allegedly between Spila and co-conspirators based on Federal Rule of Evidence 902(11).  Spila contends that the pertinent portions of these emails that were admitted are not self-authenticating under Federal Rule of Evidence 902(11).  It would be fatal to the Government's case not to be able to properly authenticate these emails and have them part of the evidence.

6

United States v. Arturs Spila, Appeal Docket Number 23-13913

Spila believes oral argument is necessary to flesh out in more detail the
above referenced issues.

Respectfully submitted,

*/s/Joseph H. Saul*
Joseph H. Saul
301 Washington Avenue
Marietta, Georgia 30060
770-499-7000
Attorney for Appellant
Georgia Bar No. 432592

United States v. Arturs Spila, Appeal Docket Number 23-13913

## **TABLE OF CONTENTS**

**CERTIFICATE OF INTERESTED PERSONS** .................................................**2**

**CERTIFICATE OF COMPLIANCE AND SERVICE** ........................................**5**

**STATEMENT REGARDING ORAL ARGUMENT** ...........................................**6**

**TABLE OF CONTENTS** .................................................................................**8**

**STATEMENT OF JURISDICTION** ...............................................................**11**

**STATEMENT OF THE ISSUES** ....................................................................**12**

**I.  STATEMENT OF THE CASE** .................................................................**14**

   a.     Procedural History ...........................................................................14

   b.     Statement of Facts ...........................................................................15

**STANDARD OF REVIEW** ............................................................................**20**

**SUMMARY OF ARGUMENT** .......................................................................**21**

**ARGUMENT** ................................................................................................**23**

   Issue 1: Was there "insufficient evidence" to convict Spila since the Government did not prove an element of the charged crime, to wit:  Whether Spila and/or his co-conspirators had knowledge that the proceeds used in the alleged money laundering conspiracy came from a felony?.......................................................23

   Issue 2: Did the Government provide an improper statement on the evidence during their closing argument and did the Judge's overruling of Spila's objection during closing unduly prejudice Spila? .............................................................30

   Issue 3: Were Gmail emails improperly authenticated and incorrectly admitted into evidence? ........................................................................................................32

   Issue 4: Did the District Court improperly allow FBI Agent Danie Saint Cyr to testify as a lay witness?........................................................................................38

**CONCLUSION** .............................................................................................**40**

**CERTIFICATE OF SERVICE** .......................................................................**41**

**CERTIFICATE OF SERVICE** .......................................................................**42**

United States v. Arturs Spila, Appeal Docket Number 23-13913

## TABLE OF AUTHORITIES

### Cases

*Burgess v. United States*, 553 U.S. 124, 130 (2008) ...............................................28

*Flores-Figueroa v. United States*, 556 U.S. 646 (2009)................................... 26, 27

*T. Harris Young & Assc., Inc. v. Marquette Electr., Inc.*, 931 F.2d 816, 828 (11th Cir. 1991) ...............................................................................................................35

*United States v. Calle*, 822 F.2d 1016, 1020 (11th Cir. 1987) ...............................21

*United States v. Campa*, 529 F.3d 980, 997 (11th Cir. 2008) ...............................21

*United States v. Capers*, 708 F.3d 1286 (11th Cir. 2013)......................................20

*United States v. Collado*, 439 F. App'x 845, 848 (11th Cir. 2011)........................21

*United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013)......................................35

*United States v. Friske*, 640 F.3d 1288, 1290–91 (11th Cir. 2011).........................20

*United States v. Gaudin*, 515 U.S. 506, 519 (1995) ...............................................26

*United States v. Gbenedio*, 95 F. 4th 1319, 1332 (11th Cir. 2024) ........................39

*United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991)...............................20

*United States v. Hill*, 167 F.3d 1055 (6th Cir. 1999)..............................................25

*United States v. Innocent*, 977 F.3d 1077, 1083 (11th Cir. 2020)..........................29

*United States v. Mendez*, 528 F.3d 811, 814 (11th Cir.2008).................................20

*United States v. Murillo*, 443 F. App'x 472, 474 (11th Cir. 2011) .........................27

*United States v. Novaton*, 271 F.3d 968, 1005 (11th Cir. 2001) ............................21

*United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989)................................20

*United States v. Shah*, 125 F. Supp.3d 570, 575 (E.D.N.C. June 5, 2015)..............35

*United States v. Spletzer*, 535 F.2d 950, 954 (5th Cir. 1976) .................................27

### Statutes

18 U.S.C. § 1956(a)(1)(B)(i)............................................................................ 23, 24

18 U.S.C. § 1956(c)(1)..............................................................................................25

18 U.S.C. § 1956(h) ...................................................................................................6

28 U.S.C. §1291 ........................................................................................................11

O.C.G.A. § 16-8-12(a)(1)(B) ...................................................................................29

O.C.G.A. § 16-8-14(b)(1)(C)(ii)..............................................................................29

O.C.G.A. § 17-10-3...................................................................................................29

O.C.G.A. § 40-6-393(c) ............................................................................................29

### Other Authorities

Black's Law Dictionary (11th ed. 2019) ..................................................................28

Fed. R. Evid. 701(c)..................................................................................................39

Fed. R. Evid. 702 ......................................................................................................39

Fed. R. Evid. 803(6)..................................................................................................34

Fed. R. Evid. 803(6)(A) ............................................................................................35

Fed. R. Evid. 803(6)(C) ............................................................................................35

United States v. Arturs Spila, Appeal Docket Number 23-13913

Fed. R. Evid. 901(a) ..................................................................................32
Federal Rule of Criminal Procedure 16 ....................................................40
Federal Rule of Evidence 1006..................................................................23
Federal Rule of Evidence 902(11) ............... 6, 14, 22, 23, 32, 33, 34, 35, 36, 37, 38
Rule 4 of the Federal Rules of Appellate Procedure ................................11

United States v. Arturs Spila, Appeal Docket Number 23-13913

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment in case No. 1:21-cr-00375-MLB-JEM-3, *United States v. Arturs Spila*, heard in the United States District Court, Northern District of Georgia, Atlanta Division. Jurisdiction is proper in the United States Court of Appeals for the Eleventh Circuit under 28 U.S.C. §1291 and Rule 4 of the Federal Rules of Appellate Procedure. This case involves a direct appeal of a criminal conviction from the United States District Court for the Northern District of Georgia, Atlanta Division.  On November 9, 2023, Spila was sentenced to 32 months of confinement [Doc. No. 92].  The NOTICE OF APPEAL was timely filed on November 22, 2023 [Doc No. 94].

United States v. Arturs Spila, Appeal Docket Number 23-13913

## <u>STATEMENT OF THE ISSUES</u>

Issue 1: Was there "insufficient evidence" to convict Spila since the Government did not prove an element of the charged crime, to wit:  Whether Spila and/or his co-conspirators had knowledge that the proceeds used in the alleged money laundering conspiracy came from a felony?

Issue 2: Did the Government provide an improper statement on the evidence during their closing argument and did the Judge's overruling of Spila's objection during closing unduly prejudice Spila?

Issue 3: Were Gmail emails improperly authenticated and incorrectly admitted into evidence?

Issue 4:  Did the District Court improperly allow FBI Agent Danie Saint Cyr to testify as a lay witness?

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. 23-13913
Criminal File No.: 1:21-cr-00375-MLB-JEM-3

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee

versus

ARTURS SPILA

Defendant-Appellant

## A DIRECT APPEAL OF A CRIMINAL CASE FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA

Appellant Arturs Spila ("Spila") hereby offers this brief appealing his

conviction from a jury trial and sentence [Doc. 72, 92].

United States v. Arturs Spila, Appeal Docket Number 23-13913

## I.    STATEMENT OF THE CASE

### a.  Procedural History

On April 5, 2022, a grand jury sitting in the Northern District of Georgia issued the first superseding indictment against Defendant Spila and his co-defendants Ivan Kanunnikov and Dmitree Zherebiatev and charged them with one count of Money Laundering Conspiracy [Doc. No. 27].

Prior to trial, Spila and the Government each filed motions in limine related to the Government's intent to authenticate Gmail emails through Federal Rule of Evidence 902(11) [Doc. Nos. 63 and 64]. The Court granted the Government's motion to allow authentication via Federal Rule of Evidence 902(11) [Docket entry on July 20, 2023 and Doc. No. 67].

On August 9, 2023, Spila's jury trial began. Spila orally moved for a judgment of acquittal during trial and the District Court denied that motion [Doc. No. 111 at 20:14-15]. At the end of the trial week, on August 11, 2023, the jury returned a verdict of Guilty on Count 1 [Doc. No. 72]. On October 25, 2023, Spila filed a Motion for New Trial and Renewed Motion for Judgment of Acquittal [Doc No. 83]. On November 9, 2023, the Motion for New Trial and Renewed Motion for Judgment of Acquittal was heard and orally denied [Doc. No. 90]. The District Court entered a written order denying the Motion for New Trial and Renewed Motion for Judgment of Acquittal on November 17, 2023 [Doc No. 93]. On

November 9, 2023, Spila was sentenced to 32 months of confinement [Doc. No. 92]. The NOTICE OF APPEAL was filed on November 22, 2023 [Doc No. 94]. Spila is currently incarcerated.

      b.  <u>Statement of Facts</u>

The Government alleged in their case that Spila helped move laundered money out of the United States [Doc. No. 110 at 62:10-25]. The alleged laundered money came from a fraud scheme; the alleged victims of the fraud scheme were people living in the United States seeking employment through online job announcements [Doc. No. 110 at 173:7-16 and 177:12-14].

Spila's co-Defendants Ivan Kanunnikov and Dmitree Zherebiatev have not yet been arrested [Doc. No. 110 at 152:1-5]. Spila was 18 years old and from Riga, Latvia when he entered the United States [Doc. No. 109 at 80:7-8 and 97:14-23]. As it relates to this case he was in the United States from May 23, 2018 through August 14, 2018 [Doc. No. 109 at 84:17-21 and 85:16-20].

The alleged underlying fraud scheme involved a work from home scheme [Doc. No. 109 at 37:14-25 and 38:1-25]. The alleged work from home scheme induced people living in the United States to believe that they were working for a legitimate company [Doc. No. 109 at 38:16-25, 39:1-15, and 50:12-16]. Spila's alleged co-conspirators would reach out to people to determine if they wanted to work from home for a foreign based company [Doc. No. 109 at 57:13-19]. The

alleged victims were promised compensation based on salary and/or commission [Doc. No. 109 at 45:12-15 and 73:15-21]. Usually the alleged fake foreign company representative would provide an official appearing employment contract [Doc. No. 109 at 39:11-25]. The Government alleges that all of this information was fabricated to deceive the alleged victims.

The alleged co-conspirators would usually provide an innocuous task to the victims for their first assignment [Doc. No. 109 at 41:22-25 and 42:8-21]. In many instances, that first task involved providing a written report to the alleged employer [Doc. No. 110 at 164:1-20]. After successful completion of the first task, the alleged foreign employer would provide one or more additional tasks [Doc. No. 109 at 42:22-25, 43:17-25, and 44:1-4]. The foreign employer would explain that the next assignment is for the alleged victim to accept checks from American customers of the foreign employer [Doc. No. 109 at 43:20-25, 44:1-4 and 10-12], cash the checks at the victim's local bank [Doc. No. 109 at 44:13-16], and then mail the cash to the foreign company's supervisor in the United States [Doc. No. 109 at 45:10-15 and 21-25; Doc. No. 109 at 46:1-2] . After a few days or weeks, the victim's bank would contact the victim to tell them the check was fraudulent and to return the funds [Doc. No. 109 at 46:20-25]. In many instances, the alleged victims could not return the funds as they had already mailed the cash at the direction of their alleged foreign employer [Doc. No. 109 at 49:4-10].

United States v. Arturs Spila, Appeal Docket Number 23-13913

The Government contends that Spila opened three bank accounts once he arrived in the United States  [Doc. No. 110 at 19:20-25, 20:1-3, and 36:11-14]. The bank accounts were opened at Bank of America, Wells Fargo, and JPMorgan Chase [Doc. No. 110 at 20:2-3].  The Government alleges that Spila's role was to receive cash from alleged victims [Doc. No. 110 at 44:4-20].  He was then to deposit the cash [Doc. No. 110 at 37:3-5].  Finally, Spila was allegedly to wire the money he received out of the United States [Doc. No. 110 at 42:20-24].

Through email communications allegedly by Spila and/or his co-defendants, the Government contended, and the District Court found by a preponderance of the evidence, that Spila was in a conspiracy to commit money laundering with Dmitrii Zherebiatev and Ivan Kanunnikov [Doc. No. 110 at 103:1 through 105:18].  The Government obtained these email conversations through search warrants to Google, as emails between Zherebiatev and Kanunnikov were conducted through Gmail [Doc. No. 110 at 71:7-12].  Spila allegedly used a different type of email account (artursspila@inbox.lv) [Doc. No. 110 at 78:16-19].  Kanunnikov allegedly communicated directly with Spila by email using the email aftershock777@gmail.com and the name "Jef Jordan" instead of Ivan Kanunnikov [Doc. No. 110 at 77:20-22 and 78:16-19].  The Government contends that Kanunnikov would send Spila emails, mostly with no content except for a subject

line, and would include attachments that the Government contends are fake invoices in furtherance of the conspiracy [Doc. No. 110 at p. 86:15 through 87:6].

The Government contends that these fake invoices were used to instruct Spila where to send wires from his bank accounts [Aug. 10 transcript p. 216:21-25]. Many of the fake invoices were bare bones and were as simple as stating that the invoices were for "Payment of services" [Doc. No. 110 at 86:19-20] or "for flowers." [Doc. No. 110 at 88:19-21]. Many times alleged fake invoices that were sent to Spila, even if they purported to be from separate/distinct companies, would contain the same formatting (including the same bolded portions, font and size of text, coloring, black dividing lines, same spacing, and same numbering conventions) [Doc. No. 110 at 87:10 through 90:10]. In some instances though, the alleged fake invoices from the same alleged fake company would have different numbering conventions on the invoices and other differences not consistent with the same company if they had been real invoices [Doc. No. 110 at 92:12-25].

The Government alleged that wire transfers out of Spila's bank accounts would match the amount listed in fake invoices [Doc. No. 110 at 93:9-23]. And that the recipient of the wire would match the company named in the fake invoice [Id.].

United States v. Arturs Spila, Appeal Docket Number 23-13913

There were also a number of emails solely between Kanunnikov and Zherebiatev (using avryaskin@gmail.com and the name "Mike Jefferson" [Doc. No. 110 at 74:22 through 76:2]) [*See also* Exhibits 130-177 at Doc. Nos. 78-93 through 80-18]. Those email exchanges would generally include photos of cash [Doc. No. 110 at 112:11-17], photos of envelopes [Doc. No. 110 at 111:2-11], and photos of wire transfers included as attachments [Doc. No. 110 at 113:9-23]. Those photos were purportedly taken by Spila and passed along to Kanunnikov [Doc. No. 110 at 114:7-18]. The Government contends that the wire transfer receipts matched wire transfers made from Spila's alleged bank accounts [Doc. No. 110 at 114:2-6]. In one instance, there is a photo of a check made out to Jacqueline Pennington in the amount of $3,633.66 [Doc. No. 110 at 119:16 through 120:8]. Ms. Pennington is an alleged victim of the work from home scheme [Doc. No. 110 at 173 through 176]. Ms. Pennington never cashed that check and instead sent the uncashed check to the address her alleged fake employer instructed her to send the cash to [Doc. No. 110 at 183:1-13]. The photograph of the check was allegedly sent by Spila to Kanunnikov [Doc. No. 110 at 120:12-17]. That check was allegedly deposited directly into Spila's bank account a few days before he left the United States, even though it is made out to Jacqueline Pennington [Doc. No. 110 at 64:13-25].

In total, the Government contended that Spila made 100 cash deposits totaling $286,000.00 into his three bank accounts opened in the United States and $256,000.00 in outgoing wire transfers [Doc. No. 110 at 123:15-22].

## STANDARD OF REVIEW

I.    Insufficiency of the Evidence.

"We review de novo a District Court's denial of judgment of acquittal on sufficiency of evidence grounds, considering the evidence in the light most favorable to the Government, and drawing all reasonable inferences and credibility choices in the Government's favor." *United States v. Capers*, 708 F.3d 1286 (11th Cir. 2013), *citing United States v. Friske*, 640 F.3d 1288, 1290–91 (11th Cir. 2011). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Capers citing United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991). "The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *Capers citing United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989). "But "[w]hen the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction."" *Capers citing United States v. Mendez*, 528 F.3d 811, 814 (11th Cir.2008).

20

II.     Did the Government Provide an Improper Statement on the Evidence
        During Their Closing Argument.

Spila challenges the Government's improper statements made during closing

arguments.  A new trial should be ordered if Spila can show "(1) whether the

challenged comments were improper and (2) if so, whether they prejudicially

affected the substantial rights of the defendant."  *United States v. Campa*, 529 F.3d

980, 997 (11th Cir. 2008).

III.    Admissibility of Gmail Emails By Federal Rule of Evidence 902(11).

This Court "review[s] the district court's evidentiary decisions only for a

clear abuse of discretion."  *United States v. Novaton*, 271 F.3d 968, 1005 (11th Cir.

2001); *United States v. Calle*, 822 F.2d 1016, 1020 (11th Cir. 1987).

IV.     Whether the District Court Improperly Allowed FBI Agent Danie
        Saint Cyr to Testify As a Lay Witness.

"We review the district court's admission of the testimony . . . [Spila]

contends constituted improper expert testimony for an abuse of discretion."  *United*

*States v. Collado*, 439 F. App'x 845, 848 (11th Cir. 2011).

## SUMMARY OF ARGUMENT

The evidence presented at trial was insufficient to prove Arturs Spila guilty

as charged in the indictment.  There was no evidence presented as to one of the

elements of Conspiracy to Commit Money Laundering.  Specifically, the

Government provided no evidence that Spila or any of his co-conspirators had any

United States v. Arturs Spila, Appeal Docket Number 23-13913

knowledge that the illegal funds derived from wire fraud were proceeds from a felony. The Money Laundering statute and the District Court's jury instructions both required *knowledge* that the illegal proceeds used in the money laundering conspiracy came from an underlying crime that was a felony. The Government argues that Spila only had to have knowledge that the proceeds came from something illegal (misdemeanor or felony).

Additionally, the Government improperly commented on the evidence presented at trial during its closing argument. Spila discussed during his closing that the Government did not provide any evidence that Spila or any of his alleged co-conspirators had any knowledge that the illegal funds derived from wire fraud were proceeds from a felony as required. The Government used part of their rebuttal to respond and stated that "you [Spila] know that the fraud is a felony." [Doc. No. 111 at 85:21-22]. But there was no evidence of that ever presented during trial.

The District Court improperly admitted Gmail emails to and from alleged co-conspirators and to and from alleged co-conspirators and allegedly Spila. The Government introduced them as self-authenticating under Federal Rule of Evidence 902(11). That the entirety of the emails were business records of Google and therefore self-authenticating. Without these emails, it would be difficult for the Government to prove their case with the remaining evidence presented. Spila

United States v. Arturs Spila, Appeal Docket Number 23-13913

contends that the emails were not properly authenticated and should not have been admitted. Specifically, that the attachments, email subject, and any substantive content of the emails were not Google business records and should not have been admitted under Federal Rule of Evidence 902(11).

Finally, this case involved Spila's bank records being examined. The Government believed them to be voluminous and introduced summary exhibits related to withdrawals and deposits made in each account pursuant to Federal Rule of Evidence 1006. To present this evidence and analysis related to the bank accounts, the Government called FBI Agent Danie Saint Cyr to testify. The District Court allowed Agent Saint Cyr to testify as a lay witness. Spila contends that she improperly testified as an expert and her testimony should have been inadmissible.

**ARGUMENT**

Issue 1: Was there "insufficient evidence" to convict Spila since the Government did not prove an element of the charged crime, to wit: Whether Spila and/or his co-conspirators had knowledge that the proceeds used in the alleged money laundering conspiracy came from a felony?

Spila was found guilty of conspiracy to commit money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) [Doc. No. 72].[1] But the Government failed to present

---

[1] The District Court denied Spila's motion for judgement of acquittal made during trial [Aug. 11 Transcript p. 408:14-15]. The parties provided post-trial briefing on

sufficient evidence to find Spila or any of his co-conspirators knowingly joined a money laundering conspiracy. The Government failed to present any evidence that Spila or his co-conspirators *knew* that the conspiracy involved proceeds from a "felony." "Knowledge" that the money/proceeds were from a felony is an element of the conspiracy to commit money laundering offense and is included in both the money laundering statute and the District Court's jury instructions. The Government argues otherwise and claims that Spila only needed to have "knowledge" that the money/proceeds came from an illegal activity, not specifically a felony as Spila contends.

Section 1956(a)(1) states in part that "Whoever, knowing that the property involved in a financial transaction represent the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of a specified unlawful activity . . . ." 18 U.S.C. § 1956(a)(1). That statute defines the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" as follows: "that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law . . . ." 18

---

the issue and the District Court denied Spila's renewed motion for judgment of acquittal [Doc. No. 93].

U.S.C. § 1956(c)(1).  The plain, unambiguous reading of Section 1956(c)(1) states that you must know the property involved in the money laundering scheme was from a felony.[2]

Similarly, the District Court's jury instructions (which were taken from the Eleventh Circuit Pattern Charges) tracked Section 1956's language related to knowledge of a felony [Doc. No. 77 at pages 73, 75, and 78; Doc. No. 111 at 39:4-12 and 41:22-25].[3]  In fact, the District Court's jury instructions made it clear that "unlawful activity" means a felony [Doc. No. 111 at 41:22-25].  While the Government contends that all they had to prove was that the illegal proceeds came from something illegal (misdemeanor or felony), *the jury instructions make it clear that is not the case and that there must be knowledge that the illegal proceeds "came from an activity that's a felony* under state, federal, or foreign law."  [Doc. No. 111 at 41:22-25; Doc. 77 at 78 (emphasis added)].  The idea that Spila or his co-conspirators only had to have knowledge that the proceeds came from something illegal, as opposed to a felony, first appeared during the Government's

_____

[2] The Government and the District Court relied on a Sixth Circuit case, *United States v. Hill*, to show that knowledge of a felony is not an element of 18 U.S.C. § 1956(a)(1).  167 F.3d 1055 (6th Cir. 1999).  Spila concedes that the Sixth Circuit rules against Spila's argument in this brief, but that case is not precedent and its holding ignores the plain language of Section 1956 and instead makes a ruling based on what it thought Congress wanted the statute to mean, but Congress told us what it meant by defining "unlawful activity" as a felony.

[3] The Government did not object to this portion of the District Court's instructions.

United States v. Arturs Spila, Appeal Docket Number 23-13913

initial closing in contravention to the instructions the District Court had just

charged the jury with and Section 1956 itself.  [Doc. No. 111 at 58:2-15].  Spila

objected to that argument when it was repeated during the Government's rebuttal

and the District Court denied the objection [Doc. No. 111 at 85:8-14].

United States v. Gaudin, reminds us that "the Fifth and Sixth Amendments

require conviction by a jury of *all elements* of the crime . . . ."  515 U.S. 506, 519

(1995) (emphasis in original).  The Supreme Court in *Gaudin* found that

"materiality" was an essential element for the jury's determination.  The *Gaudin*

court confirmed that the jury's "constitutional responsibility is not merely to

determine the facts, but to apply the law to those facts and draw the ultimate

conclusion of guilt or innocence." *Id.* at 514.  In the instant case, the Government

never even mentioned the word "felony" in its presentation of the evidence, nor

was there any evidence that Spila or his co-conspirators had "knowledge" that the

proceeds were from a felony.

The Supreme Court in *Flores-Figueroa v. United States* ruled that the

Government had to prove guilty knowledge.  556 U.S. 646 (2009).  The Supreme

Court stated that the Government in an aggravated identity theft case must prove

that an accused "knew" that the means of identification involved did in fact belong

to another person. *Id.* at 657.  That Court stated that "The manner in which the

courts ordinarily interpret criminal statutes is fully consistent with this ordinary

26

English usage.  That is to say courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element."  *Id.* at 652.  Therefore, the Government in the instant case needed to prove that Spila or his co-conspirators "knew" the proceeds were from a "felony."

When a party, specifically the Government in the instant case, fails to object to a court's jury instruction ". . . that a certain element is required to convict, that element becomes necessary for a conviction under the 'law of the case doctrine.'" *United States v. Murillo*, 443 F. App'x 472, 474 (11th Cir. 2011) (citing *United States v. Spletzer*, 535 F.2d 950, 954 (5th Cir. 1976)).  Again, in the instant case there was not any evidence presented that Spila or any co-conspirator had "knowledge" that the proceeds of the underlying crime came from a "felony."  The Government's failure to object to the pattern jury instructions relating to knowledge of a felony as an unlawful activity makes it the law of the case [Doc. No. 77 at 73, 78; Doc. No. 111 39:4-12 and 41:22-25].  Since it was the law of the case, and no evidence was presented related to that material element, this Court should enter a judgment of acquittal in favor of Spila.  The instruction relating to knowledge of a felony became an element that the Government had to prove.  The Government in this case, needed to prove that Spila and his co-conspirators knew that the unlawful activity was a felony and not a misdemeanor.

The Government presented no evidence at trial as to what a felony is.  The jury instructions did not explain what a felony is, however, the Government had the opportunity and could have asked for an instruction on the definition of a felony.  A jury cannot infer from the evidence that Spila or his co-conspirators had knowledge that the proceeds came from a felony.

The term "Felony" is a technical term.  That term was not defined by the jury instructions given in the case.  Common sense does not dictate what is and is not a felony.  Instead, the legislature designates what crimes are felonies and what crimes are misdemeanors based on the length of the sentence and other factors. "[T]he term "felony" is commonly defined to mean a crime punishable by imprisonment for more than one year."  *Burgess v. United States*, 553 U.S. 124, 130 (2008); *see also* Black's Law Dictionary (11th ed. 2019), (defining "felony" as "[a] serious crime usu[ally] punishable by imprisonment for more than one year or by death.").

Common sense cannot help a jury determine what is and what is not a felony without knowing that a felony includes punishment of one year or more.  That information was not presented to the jury.  There would have needed to be some evidence that Spila or his co-conspirators had knowledge of the definition of a felony.  For example, in a felon in possession of a gun case, the Government must prove that the defendant had knowledge that he had a prior felony.  *See United*

*States v. Innocent*, 977 F.3d 1077, 1083 (11th Cir. 2020) (internal citation omitted) (holding "that serving more than a year in prison provides circumstantial evidence of knowledge of felon status.").

A felony is a product of the legislature that creates the crime. Common sense *may* lead someone to believe that anytime you kill someone it is a felony, yet Georgia allows vehicular homicide to be a misdemeanor (O.C.G.A. § 40-6-393(c) citing to O.C.G.A. § 17-10-3 (Misdemeanors, how punished)). On the other hand, something as simple as shoplifting becomes a felony upon a fourth conviction, no matter what the value of the items being shoplifted were (O.C.G.A. § 16-8-14(b)(1)(C)(ii). Finally, in some instances the trial judge has discretion to enter the penalty as a misdemeanor or a felony (O.C.G.A. § 16-8-12(a)(1)(B)). There is no rhyme or reason what constitutes a felony other than if the legislature deems it to be a felony. None of the evidence presented at Spila's trial produced direct or circumstantial evidence that Spila or his co-conspirators would have knowledge that the money/proceeds from wire fraud came from a felony.

There was no evidence presented as to an element of conspiracy to commit money laundering – specifically that Spila and his co-conspirators knew that the proceeds would come from an activity that is a felony under State, Federal, or foreign law. The Government only mentioned that Wire Fraud was a felony in this case in rebuttal to Spila's closing argument, but there was no evidence presented

during trial related to Spila and/or his co-defendants having knowledge that wire fraud is a felony or that the proceeds/money related to the money laundering came from a felony.  This Court should overturn the jury's verdict and grant Spila's motion for judgment of acquittal.

> Issue 2: Did the Government provide an improper statement on the evidence during their closing argument and did the Judge's overruling of Spila's objection during closing unduly prejudice Spila?

As stated above in Issue 1, the Government had to prove that Spila and/or his co-conspirators had knowledge that the funds they were laundering were proceeds from a felonious activity.  The Government contended during their initial closing that "unlawful activity" only meant that Spila or his co-conspirators had to know that the proceeds came from "something illegal."  [Doc. No. 111 at 58:2-18]. That is incorrect as stated above.  Both 18 U.S.C. § 1956 and the given jury instructions specifically state that "unlawful activity" means the proceeds would come from an illegal activity that is a felony under State, Federal, or foreign law. Counsel for Spila presented their closing and explained that no evidence was presented that Spila or any co-conspirator knew that wire fraud was a felony or that the proceeds/money came from a felony.  [Doc. No. 111 at 76:3-25 and 77:1-3].

During its rebuttal portion of the closing arguments, the Government improperly stated that Spila and/or his co-conspirators did in fact have knowledge

United States v. Arturs Spila, Appeal Docket Number 23-13913

that the underlying fraud was a felony.  [Doc. No. 111 at 85:15-22].[4]  There was no

evidence presented throughout the trial that Spila or his co-conspirators had

knowledge that the underlying proceeds came from an activity that was a felony.

Instead, the Government responded in its rebuttal that Spila or his co-

conspirators had to have known that the proceeds came from a felony based on

circumstantial evidence.  They argued that the amount of money at issue

($280,000), and the other facts, such as people allegedly sending Spila cash

through the mail addressed to people other than Spila's name showed that Spila

had knowledge that the funds were coming from a felony activity.  [Doc. No. 111

at 85:15-22].  This comment in the closing by the Government was improper since

there was no evidence that Spila or his co-conspirators had knowledge that the

funds they allegedly laundering came from an activity that is a felony.  The only

"evidence" presented on this issue came from the Government's rebuttal to the

closing.  Spila was further unduly prejudiced by the District Court overruling his

objection to the Government's statement as it would lead a reasonable jury to

believe that the Government's statement was correct and Spila's was incorrect.

---

[4] Spila objected to the Government's rebuttal on the issue but the Court overruled
the objection.  The Court's overruling of the objection was an endorsement by the
Court of the Government testifying and that their position was correct and Spila
was wrong.  Spila then moved for a mistrial at the end of closings and the District
Court denied that motion [Doc. No. 111 at 100:12-13].  Finally, Spila filed a
motion for new trial on the same basis and the District Court denied that motion
[Doc. No. 93].

United States v. Arturs Spila, Appeal Docket Number 23-13913

The District Court erred when it denied Spila's objection during the Government's rebuttal portion of its closing, Spila's motion for mistrial, and motion for new trial. Based on the incorrect statements made during the Government's closing, this Court should reverse Spila's conviction and remand to the District Court for a new trial.

<u>Issue 3: Were Gmail emails improperly authenticated and incorrectly admitted into evidence?</u>

The District Court admitted Gmail email exhibits 101 through 113 and their subparts [Doc Nos. 78-63 through 78-92] and 130 through 177[5] and their subparts [Doc. Nos. 78-93 through 80-36] over Spila's authentication objection.[6]  Without these exhibits being admitted, the Government's case would have been drastically different as there would not have been evidence of Spila allegedly receiving "fake" invoices and there would have been no evidence of photos of cash allegedly received by Spila and wire confirmations allegedly from Spila's bank accounts. The Government failed to properly authenticate the Gmail/Google documents. Fed. R. Evid. 901(a).

---

[5] The Government also separately introduced a translation key to any emails in Russian as Exhibit 199 [Doc. No. 80-37].

[6] Spila objected to these emails being admitted prior to trial in a motion in limine [Doc. No. 63].  The District Court denied that motion and stated the emails could come in as self-authenticating under Federal Rule of Evidence 902(11) [Doc No. 67].  Additionally, Spila objected during trial related to Exhibits 101 through 113 [Transcript p. 213:4-9] and for Exhibits 130 through 177 [Transcript p. 236:2-14 and p.238:13-14].

United States v. Arturs Spila, Appeal Docket Number 23-13913

Prior to trial, the Government produced the above referenced emails to Spila that it obtained by search warrant from Google/Gmail. The emails are purportedly emails between co-conspirators (allegedly including Spila). Some include substance allegedly written and sent by co-conspirators and many of the emails include attachments. The attachments consist of invoices allegedly related to this matter, photographs related to this matter, and other related documents. Each email used as an exhibit was either received or sent from Google's Gmail service ("Google" and "Gmail" are used interchangeably throughout this brief). The Government provided notice to Spila prior to trial that it intended to authenticate the above referenced email exhibits (Exhibits 101-113 and 130-177) by Federal Rule of Evidence 902(11) [Both of Google's Certificate's of Authority that were provided to Spila can be found at Doc. No.63-3].

The District Court allowing the Government to authenticate an entire email (including actual substance and attachments) under Federal Rule of Evidence 902(11) was improper. That rule states that "The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person [is self-authenticating] . . . ." Fed. R. Evid. 902(11). In other words, a document can be self-authenticating if it meets the business records exception and also contains a certification from the company. The Government does not meet the business

United States v. Arturs Spila, Appeal Docket Number 23-13913

records exception for all of the Google email documents they introduced at trial.

Therefore, the non-business record portions cannot be self-authenticating and the

Government needed to authenticate the non-business record portions by some other

means than Rule 902(11). Federal Rule of Evidence 803(6)(A)-(C) states as

follows:

> Records of a Regularly Conducted Activity. A record of
> an act, event, condition, opinion, or diagnosis if:
> (A)  the record was made at or near the time by – or from
>      information transmitted by – someone with
>      knowledge;
> (B)  the record was kept in the course of a regularly
>      conducted activity of a business, organization,
>      occupation, or calling, whether or not for profit;
> (C)  making the record was a regular practice of that
>      activity . . . .

Fed. R. Evid. 803(6). Here the Government did not meet the requirements that the

contents/substance and attachments to an email received by a Gmail account, sent

by a Gmail account, or both -- are Google business records. In essence, Google

has no knowledge of the contents of the email body/substance or what is contained

in the attachments. Importantly, Google did not actually create those documents –

some third party not employed by Google created the substance of the email and

any attachments at issue in this case.

The only information that Google "made at or near the time by – or from

information transmitted by – someone with knowledge" are the portions of any

email that Gmail actually created (e.g., the sending, receiving, copied email

34

United States v. Arturs Spila, Appeal Docket Number 23-13913

address, and the date and time of the email).  Fed. R. Evid. 803(6)(A).  Storing an

email as a "regular operation of the business is simply insufficient . . . alone to

establish a foundation for admission under Rule 803(6)(B)."  *United States v.*

*Cone*, 714 F.3d 197, 220 (4th Cir. 2013); *see also United States v. Shah*, 125 F.

Supp.3d 570, 575 (E.D.N.C. June 5, 2015) ("The 'knowledge' requirement ensures

trustworthiness in the records of a regularly conducted business activity . . . . If any

person in the chain of those contributing to the creation of the final business record

is not acting in the regular course of business, then the essential element of

trustworthiness fails."); *see also T. Harris Young & Assc., Inc. v. Marquette*

*Electr., Inc.*, 931 F.2d 816, 828 (11th Cir. 1991) ("For this exception [Rule 803(6)]

to be available, all persons involved in the process must be acting in the regular

course of business—otherwise, an essential link in the trustworthiness chain is

missing.").  Gmail did not create the content of the subject line, the actual

substance of the email, or the attachments to any of the emails that the Government

introduced at trial.  Additionally, the contents of the email, contents of the subject

line, and any attachments are not "a regular practice of" of Google.  Fed. R. Evid.

803(6)(C).  The contents of the email and attachments are not Google's records

and no one contends that Google created these documents.

Since the contents of an email and the attachments are not a Google business

record, then the Government cannot use Federal Rule of Evidence 902(11) to

authenticate them.  The Government can only authenticate to/from/cc/bcc and the date/time as those are Google's business records and the information is created by Google.  To get to the Government's conclusion that the contents/substance of an email and the attachments of an email are business records and therefore are authenticated under Federal Rule of Evidence 902(11) would create absurd results.

The following examples explain the problems with the Government's premise (and District Court's ruling) that the contents of an email and the attachments to a Gmail email would automatically become authenticated through Google's 902(11) certificate simply because the documents were processed through Google's email (even though they were not created by Google):

1)      If someone emailed a copy of Coca-Cola's proprietary recipe as an attachment to an email, according to the Government, Google could authenticate it as part of their business record instead of Coca-Cola authenticating it or someone with knowledge of the recipe;

2)      If Coca-Cola used Google's cloud to store its digital copy of its proprietary recipe, then the Government would argue that Google could authenticate it as part of their business record instead of Coca-Cola's similar to above;

3)      If Coca-Cola used a vault at Truist (bank) to protect its proprietary

recipe, then Truist could authenticate it as part of their business record based on the

Government's position;

4)      If a library has a copy of *To Kill a Mockingbird*, the text of the book is

not part of the library's business record – who checked the book out and when it

was checked out is.  No one would allege that the library created the text included

in *To Kill a Mockingbird* and no one would even state that the library requested

that Harper Lee created *To Kill a Mockingbird* for the library's records.

Instead of the entire submission being authenticated as the Government may

contend in the above examples, only the business record portion of each record

could be authenticated under Federal Rule of Evidence 902(11).  For example, the

email account associated with the Coca-Cola email (along with the date/time and

to whom it was sent or received), the data related to the Google Cloud (e.g.,

amount of storage, how many documents that account has, the name of the account

holder), the account details related to the owner of the vault space at Truist, and for

example how many times *To Kill a Mockingbird* has been checked out, by whom,

and when.

The above analogies are used simply to show that the contents of an email

created by someone outside of Google and the attachments to any such email are

not Google's business records.  Since they are not Google's business records, those

portions of the emails the Government introduced at trial should not have been authenticated under Federal Rule of Evidence 902(11).  Based on the Government seeking to introduce the Gmail emails under Federal Rule of Evidence 902(11) and the District Court allowing it, there is no reason to even have anything ever authenticated.  Their theories would allow almost anything to be authenticated by anyone.  This Court should exclude the Gmail emails from Exhibits 101 through 113 and 130 through 170 and remand to the District Court for a new trial.

Issue 4: Did the District Court improperly allow FBI Agent Danie Saint Cyr to testify as a lay witness?

The Government called FBI Agent Danie Saint Cyr to testify at trial [Doc. No. 110 at 198:5-6].  Agent Saint Cyr is a forensic accountant with the FBI and had previously been an accountant in private practice [Doc. No. 110 at 199:2-12].  Agent Saint Cyr has a bachelor's degree from Bentley University, a master's degree from American University and an MBA from Mercer University [Doc. No. 110 at 199:16-18].  She also is a Certified Public Accountant and Certified Fraud Examiner [Doc. No. 110 at 199:19-24].

Agent Saint Cyr testified related "to the bank records analysis that  . . . [she] conducted" [Doc. No. 110 at 201:15-17].  Agent Saint Cyr created Exhibits 401 through 406 [Doc. No. 110 at 201:5-17; Exhibits 401 through 406 at Doc. Nos. 80-90 through 80-95].  The charts summarized different transactions related to Spila's

three alleged United States bank accounts, including total deposits/withdrawals and

what type of transactions occurred in the accounts [Doc. No. 110 at 202:1-25].

Agent Saint Cyr testified based on her expertise and not as a lay witness.

Fed. R. Evid. 702. Her testimony was based on her "scientific, technical, or other

specialized knowledge" which is specifically excluded from lay witness testimony.

Fed. R. Evid. 701(c). Agent Saint Cyr's testimony was based on "scientific or

technical knowledge" and not her "professional experience" and should have been

excluded as expert testimony. *United States v. Gbenedio*, 95 F.4th 1319, 1332

(11th Cir. 2024). She was asked to compare checks deposited into certain accounts

with the charts she created [Doc. No. 110 at 204:16-24], information related to

sources of non-cash deposits coming from refunds (which is not common

knowledge especially based on the District Court Judge's follow-up questioning

related to that issue) [Doc. No. 110 at 205:9-25 and 206:1-4], reporting issues

related to deposits/withdraws of more than $10,000 which she relied on her

expertise to answer [Doc. No. 110 at 207:12-25 and 208:1-16], matching which

account wire funds came from and went to [Doc. No. 110 at 209:1-25], and which

wires were sent internationally versus domestic [Doc. No. 110 at 210:13-25 and

211:1-13].

Each of these opinions required Agent Saint Cyr's expertise. She testified as

a forensic accountant – creating charts and testifying to how money was moved

from different accounts and out of the country.  Of course she is an expert, why else would the Government have needed a forensic accountant to testify related to money movements, they could have used the lead case agent, Special Agent William David Ware to create the charts and discuss the information in them if it was as simple as anyone who looked at the bank accounts could testify to the information.  Moreover, having a forensic accountant testify as an alleged lay witness related to financial issues would cause any reasonably juror to believe that she was an actual expert – which unduly prejudiced Spila.  This Court should exclude Agent Saint Cyr's testimony since she testified as an expert without notice (Federal Rule of Criminal Procedure 16) and remand this case to the District Court for a new trial.

## CONCLUSION

The Eleventh Circuit Court of Appeals should REVERSE the District Court's judgement and REMAND to the District Court.

Respectfully submitted this 4th Day of April, 2024.

/s/Michael H. Saul
MICHAEL H. SAUL
Attorney for Appellant Spila
Georgia Bar Number 627025
P.O. Box 4504
301 Washington Ave.
Marietta, Georgia, 30061
770-429-8787
saulattorney@gmail.com

/s/ Joseph H. Saul
Joseph H. Saul
Attorney for Appellant Spila
Georgia Bar Number: 432592
301 Washington Ave
Marietta, Georgia 30060
770-499-7000
jsaul@saulfirm.com

United States v. Arturs Spila, Appeal Docket Number 23-13913

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I have this day served Ryan Buchanan, United States

Attorney for the Northern District of Georgia, listed below a copy of the attached

Brief by depositing a copy of same in the U.S. Mail in a properly addressed

envelope, with adequate postage affixed thereon, to wit:

Ryan Buchanan, United States Attorney
Tal Chaiken, Assistant United States Attorney
Samir Kaushal, Assistant United States Attorney
Lawrence R. Sommerfeld, Assistant United States Attorney
600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
404-581-6000

April 4, 2024

*<u>/s/Joseph H. Saul</u>*
Joseph H. Saul
Attorney for Arturs Spila
Georgia Bar No. 432592
301 Washington Ave.
Marietta, Georgia, 30060
770-499-7000
Jsaul@saulfirm.com

United States v. Arturs Spila, Appeal Docket Number 23-13913

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served Appellant Arturs Spila a copy of

the attached Brief by depositing a copy of same in the U.S. Mail in a properly

address envelope, with adequate postage affixed thereon, to wit:

Arturs Spila (Register No. 28996-510)
FCI Yazoo City Medium
Federal Correctional Institution
P.O. Box 5000
Yazoo City, MS 39194

April 4, 2024

*/s/Joseph H. Saul*
Joseph H. Saul
301 Washington Ave.
Marietta, Georgia, 30060
770-499-7000
jsaul@saulfirm.com